1   GIBSON, DUNN & CRUTCHER LLP
    Robert E. Cooper, SBN 35888
2   *rcooper@gibsondunn.com*
    333 S. Grand Avenue
3   Los Angeles, California  90071
    Telephone:  (213) 229-7000
4   Facsimile:  (213) 229-7520

5   George A. Nicoud III, SBN 106111
    *tnicoud@gibsondunn.com*
6   Austin V. Schwing, SBN 211696
    *aschwing@gibsondunn.com*
7   Lindsey E. Blenkhorn, SBN 227484
    *lblenkhorn@gibsondunn.com*
8   555 Mission Street, Suite 3000
    San Francisco, California  94105
9   Telephone: (415) 393-8200
    Facsimile: (415) 393-8306

10

11              UNITED STATES DISTRICT COURT

12        FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN JOSE DIVISION

14

15  MULTIVEN, INC., a Delaware corporation,       CASE NO. C 08-05391 JW-RS

16              Plaintiff,                        **ANSWER OF DEFENDANT CISCO
                                                  SYSTEMS, INC. AND COUNTERCLAIMS**
17       v.
                                                  **DEMAND FOR JURY TRIAL**
18  CISCO SYSTEMS, INC., a California
    corporation,
19
                Defendant.
20

21  CISCO SYSTEMS, INC., a California
    corporation,
22
                Counterclaimant,
23
         v.
24
    MULTIVEN, INC., a Delaware corporation, and
25  PETER ALFRED-ADEKEYE, an individual,

26              Counterdefendants.

27

28

In accordance with the Federal Rules of Civil Procedure, Defendant Cisco Systems, Inc. ("Cisco") answers the Complaint of Multiven, Inc. (the "Complaint") and counterclaims against Multiven, Inc. and Peter Alfred-Adekeye as follows:

**ANSWER**

1.      Cisco admits that it is a world leader in the development of Internet Protocol ("IP")-based networking technologies and that as many as 14 billion devices may be connected to the Internet by 2010.  Cisco admits that networking infrastructure is powered in part by routers and switches that are complex computers with operating system software.  Cisco admits that the networking equipment industry has experienced growth in the past two decades and that it expects businesses to continue to make substantial investments in network infrastructures.  Cisco otherwise denies the allegations of paragraph 1 of the Complaint.

2.      Cisco admits that IBM exited the business of manufacturing router and switch networking equipment manufacturing in 1999, has sold and licensed certain intellectual property to Cisco, and resells certain Cisco products and services.  Some of the allegations of paragraph 2 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies those allegations.  Cisco otherwise denies the allegations of paragraph 2 of the Complaint.

3.      Cisco admits that the hardware in Cisco routers, switches, and firewalls is integrated with software that is essential to the functionality of the equipment.  Cisco admits that from time to time it releases new images of certain Cisco software that may include code that corrects a defect present in previously-released software.  Cisco also admits that from time to time it releases images of software that add one or more new features not present in previously-released software.  Cisco otherwise denies the allegations of paragraph 3 of the Complaint.

4.      Cisco denies the allegations of paragraph 4 of the Complaint.

5.      Cisco admits that it offers a service called "SMARTnet."  Cisco admits that the name "SMARTnet" is derived from the terms:  Software Maintenance ("SM"); Advance Replacement ("AR"); Technical support ("T"); and Network ("net").  Cisco otherwise denies the allegations of paragraph 5 of the Complaint.

6.      The allegations of the first sentence of paragraph 6 of the Complaint are vague, ambiguous, and constitute legal argument to which no response is required.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations or to enable it to answer the allegations regarding the conduct of Microsoft, Apple, Hewlett-Packard, and the vague and unspecified "many others," and therefore denies them.  Cisco otherwise denies the allegations of paragraph 6 of the Complaint.

7.      Cisco denies the allegations of paragraph 7 of the Complaint.

**JURISDICTION AND VENUE**

8.      Cisco admits that the Complaint is filed and this action is instituted under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26) to recover damages allegedly caused by, and to secure injunctive relief against, the named Defendant for alleged violations of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2).  Cisco denies that it caused any damages recoverable by the Plaintiff and denies that it violated Section 1 or 2 of the Sherman Act (15 U.S.C. §§ 1, 2).  Cisco otherwise denies the allegations of paragraph 8 of the Complaint.

9.      Cisco admits that it maintains an office and transacts business within this District. Cisco admits that this Court has original jurisdiction over the federal law claims alleged in the Complaint.  Cisco admits that this Court has supplemental jurisdiction over the state law claims alleged in the Complaint.  Cisco denies that it engaged in any unlawful acts, and otherwise denies the allegations of paragraph 9 of the Complaint.

**INTERSTATE COMMERCE**

10.     Cisco admits that it sells products and services across state lines and that it purchases goods and supplies in interstate commerce.  Cisco denies that its conduct has or will restrain or adversely affect interstate commerce, and otherwise denies the allegations of paragraph 10 of the Complaint.

**THE PARTIES**

11.     Cisco admits that it is a California corporation with its corporate headquarters located in San Jose, California.  Cisco admits that it was founded in 1984 and that it first sold shares to the public in 1990.  Cisco admits that it was one of the first companies to develop and sell commercial

routers to support multiple computer network protocols.  Cisco admits that it has been a leader in the development of IP-based networking technologies and that its IP-based networking technologies, together with IP-based networking technologies developed by others, enable the transmission of voice, video, and data communication across various network infrastructures worldwide.  Cisco admits that in the year 2000, it had a market capitalization of more than $500 billion.  Cisco admits that its total revenue in 2008 was $39.5 billion in revenue and that its net income in 2008 was over $8 billion.  Cisco otherwise denies the allegations of paragraph 11 of the Complaint.

12.     Cisco admits that Multiven, Inc. is a Delaware corporation with its principal place of business located in Redwood City, California.  Cisco admits that Multiven claims to provide service and maintenance support for router and networking systems, including those placed in the market by defendant Cisco.  Cisco admits that Multiven claims to be an independent service organization for networking hardware/software manufactured by various manufacturers.  Cisco is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12 of the Complaint, and therefore denies them.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS

13.     The allegations of paragraph 13 are vague, ambiguous, and constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 13 of the Complaint.

14.     Cisco admits that it was a pioneer and is now a world leader in the development of IP-based networking products and services.  Cisco admits that it designs its product and service offerings to address a wide range of customers' business needs, including improving productivity, reducing costs, and enhancing their competitiveness.  Cisco admits that it offers routing and switching products and services, and that it also offers advanced services.  Cisco also admits that it offers a service called "SMARTnet."  Cisco otherwise denies the allegations of paragraph 14 of the Complaint.

15.     Cisco admits that Cisco routers, switches, and firewalls are generally integrated with software that is essential to the functionality of the equipment.  Cisco admits that from time to time it releases new images of certain Cisco software that may include code that corrects a defect present in

previously-released software.  Cisco also admits that from time to time it releases new images of software that add one or more new features not present in previously-released software.  Cisco otherwise denies the allegations of paragraph 15 of the Complaint.

16.     Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations or to enable it to answer the allegations regarding Microsoft, Apple, Hewlett-Packard, and "many others," and therefore denies them.  Cisco otherwise denies the allegations of paragraph 16 of the Complaint.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### (Actual Monopolization in Violation of Section 2 of the Sherman Act)

17.     Except as expressly admitted in response to paragraphs 1 through 16 above, Cisco denies the allegations of paragraph 17 of the Complaint.

18.     Cisco admits that it is a pioneer in the IP-based networking industry.  Plaintiff's reference to "networking equipment market" is vague and ambiguous, and therefore Cisco denies that it has 70% of that market or that such market is a relevant market.  The first sentence of paragraph 18 of the Complaint constitutes legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations.  Cisco otherwise denies the allegations of paragraph 18 of the Complaint.

19.     Cisco admits that customers decide for their own reasons whether to purchase Cisco networking equipment, other vendors' networking equipment, or a combination of Cisco and other vendors' networking equipment.  Cisco otherwise denies the allegations of paragraph 19 of the Complaint.

20.     The allegations of paragraph 20 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations.  Cisco otherwise denies the allegations of paragraph 20 of the Complaint.

21.     Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations or to enable it to answer the allegations regarding Multiven or other independent

service organizations, and therefore denies them.  Cisco otherwise denies the allegations of paragraph 21 of the Complaint.

22.     Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations or to enable it to answer the allegations regarding Microsoft, Apple, and Hewlett-Packard and therefore denies them.  Cisco otherwise denies the allegations of paragraph 22 of the Complaint.

23.     Cisco denies the allegations of paragraph 23 of the Complaint.

24.     The allegations of paragraph 24 of the Complaint contain legal conclusions, to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 24 of the Complaint.

25.     The allegations of paragraph 25 of the Complaint contain legal conclusions, to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 25 of the Complaint.

26.     Cisco admits that it has certain patents, copyrights, and other intellectual property rights relating to networking products.  Cisco otherwise denies the allegations of paragraph 26 of the Complaint.

27.     The allegations of paragraph 27 of the Complaint contain legal conclusions, to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 27 of the Complaint.

28.     The allegations of paragraph 28 of the Complaint contain legal conclusions, to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 28 of the Complaint.

29.     Cisco admits that in fiscal year 2008, sales of services generated more than $6 billion in revenues.  Cisco otherwise denies the allegations of paragraph 29 of the Complaint.

30.     Cisco admits that it sells, markets, and distributes products and services across state lines and in interstate commerce.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations or to enable it to answer the allegations regarding Multiven's

1   practices, and on that basis denies them.  Cisco otherwise denies the allegations of paragraph 30 of

2   the Complaint.

3        31.      The allegations of paragraph 31 of the Complaint contain legal conclusions to which

4   no response is required.  To the extent a response is required, Cisco denies the allegations of

5   paragraph 31 of the Complaint.

6        32.      The allegations of paragraph 32 of the Complaint contain legal conclusions to which

7   no response is required.  To the extent a response is required, Cisco denies the allegations of

8   paragraph 32 of the Complaint.

9        33.      The allegations of paragraph 33 of the Complaint contain legal conclusions to which

10   no response is required.  To the extent a response is required, Cisco denies the allegations of

11   paragraph 33 of the Complaint.

12                              **SECOND CAUSE OF ACTION**

13          **(Attempted Monopolization in Violation of Section 2 of the Sherman Act)**

14        34.      Except as expressly admitted in response to paragraphs 1 through 33 above, Cisco

15   denies the allegations of paragraph 34 of the Complaint.

16        35.      The allegations of paragraph 35 of the Complaint constitute legal argument to which

17   no response is required.  To the extent a response is required, Cisco denies the allegations of

18   paragraph 35 of the Complaint.

19        36.      The allegations of paragraph 36 are vague, ambiguous and constitute legal argument to

20   which no response is required.  To the extent a response is required, Cisco denies the allegations of

21   paragraph 36 of the Complaint.

22        37.      The allegations of paragraph 37 of the Complaint constitute legal argument to which

23   no response is required.  To the extent a response is required, Cisco denies the allegations of

24   paragraph 37 of the Complaint.

25        38.      The allegations of paragraph 38 of the Complaint contain legal conclusions to which

26   no response is required.  To the extent a response is required, Cisco denies the allegations of

27   paragraph 38 of the Complaint.

28

39.     The allegations of paragraph 39 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 39 of the Complaint.

40.     The allegations of paragraph 40 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 40 of the Complaint.

41.     The allegations of paragraph 41 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 41 of the Complaint.

42.     The allegations of paragraph 42 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 42 of the Complaint.

43.     The allegations of paragraph 43 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 43 of the Complaint.

44.     The allegations of paragraph 44 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 44 of the Complaint.

45.     The allegations of paragraph 45 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 45 of the Complaint.

## THIRD CAUSE OF ACTION

### (Unlawful Tying Arrangement in Violation of Section One of the Sherman Act)

46.     Except as expressly admitted in response to paragraphs 1 through 45 above, Cisco denies the allegations of paragraph 46 of the Complaint.

47.     The allegations of paragraph 47 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 47 of the Complaint.

48.     The allegations of paragraph 48 are vague, ambiguous, and constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 48 of the Complaint.

49.     The allegations of paragraph 49 are vague, ambiguous and constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 49 of the Complaint.

50.     The allegations of paragraph 50 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 50 of the Complaint.

51.     The allegations of paragraph 51 are vague, ambiguous and constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 51 of the Complaint.

52.     Cisco admits that its operating system software is proprietary and that Cisco does not make its proprietary source code publicly available.  Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations or to enable it to answer the allegations regarding Multiven's practices or the practices of other ISOs, and on that basis denies them.  Cisco otherwise denies the allegations of paragraph 52 of the Complaint.

53.     Cisco denies the allegations of paragraph 53 of the Complaint.

54.     Cisco admits that from time to time it releases new images of certain Cisco software that may include code that corrects a defect present in previously-released software.  Cisco also admits that from time to time it releases new images of software that add one or more new features not present in previously-released software.  The remaining allegations of paragraph 54 are vague, ambiguous and constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the remaining allegations of paragraph 54 of the Complaint.

55.     The allegations of paragraph 55 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 55 of the Complaint.

Gibson, Dunn & Crutcher LLP

ANSWER OF DEFENDANT CISCO SYSTEMS, INC. AND COUNTERCLAIMS; CASE NO. C 08-05391 JW-RS

56.     The allegations of paragraph 56 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 56 of the Complaint.

57.     The allegations of paragraph 57 are vague, ambiguous and constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 57 of the Complaint.

58.     The allegations of paragraph 58 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 58 of the Complaint.

59.     The allegations of paragraph 59 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 59 of the Complaint.

60.     The allegations of paragraph 60 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 60 of the Complaint.

61.     The allegations of paragraph 61 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 61 of the Complaint.

## FOURTH CAUSE OF ACTION

### (Intentional Interference Prospective Economic

### Advantage and Contractual Relations)

62.     Except as expressly admitted in response to paragraphs 1 through 61 above, Cisco denies the allegations of paragraph 62 of the Complaint.

63.     Cisco admits that this Court has supplemental jurisdiction over the state law claims alleged in the Complaint.  Cisco otherwise denies the allegations of paragraph 63 of the Complaint.

64.     Cisco is without knowledge or information sufficient to form a belief as to the truth of the allegations or to enable it to answer the allegations regarding Multiven's business relationships,

1   and on that basis denies them.  Cisco otherwise denies the allegations of paragraph 64 of the

2   Complaint.

3         65.    The allegations of paragraph 65 of the Complaint constitute legal argument to which

4   no response is required.  To the extent a response is required, Cisco denies the allegations of

5   paragraph 65 of the Complaint.

6         66.    The allegations of paragraph 66 of the Complaint constitute legal argument to which

7   no response is required.  To the extent a response is required, Cisco denies the allegations of

8   paragraph 66 of the Complaint.

9         67.    The allegations of paragraph 67 of the Complaint constitute legal argument to which

10   no response is required.  To the extent a response is required, Cisco denies the allegations of

11   paragraph 67 of the Complaint.

12         68.    The allegations of paragraph 68 of the Complaint constitute legal argument to which

13   no response is required.  To the extent a response is required, Cisco denies the allegations of

14   paragraph 68 of the Complaint.

15         69.    The allegations of paragraph 69 of the Complaint constitute legal argument to which

16   no response is required.  To the extent a response is required, Cisco denies the allegations of

17   paragraph 69 of the Complaint.

### FIFTH CAUSE OF ACTION

**(Unfair Competition in Violation of**

**Cal. Bus. & Prof. Code § 17200 et seq.)**

21         70.    Except as expressly admitted in response to paragraphs 1 through 69 above, Cisco

22   denies the allegations of paragraph 70 of the Complaint.

23         71.    Cisco admits that this Court has supplemental jurisdiction over the state law claims

24   alleged in the Complaint.  Cisco otherwise denies the allegations of paragraph 71 of the Complaint.

25         72.    The allegations of paragraph 72 are vague, ambiguous, and constitute legal argument

26   to which no response is required.  To the extent a response is required, Cisco denies the allegations of

27   paragraph 72 of the Complaint.

28

73.     The allegations of paragraph 73 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 73 of the Complaint.

74.     The allegations of paragraph 74 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 74 of the Complaint.

75.     The allegations of paragraph 75 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 75 of the Complaint.

76.     The allegations of paragraph 76 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 76 of the Complaint.

77.     The allegations of paragraph 77 of the Complaint constitute legal argument to which no response is required.  To the extent a response is required, Cisco denies the allegations of paragraph 77 of the Complaint.

## SEPARATE AND ADDITIONAL DEFENSES

Without assuming any burden of proof that it would not otherwise bear, Cisco asserts the following separate and additional defenses, all of which are pleaded in the alternative, and none of which constitute an admission that Cisco is in any way liable to Plaintiff, that Plaintiff has been or will be injured or damaged in any way or that Plaintiff is entitled to any relief whatsoever.  As a defense to the Complaint and each and every allegation contained therein, Cisco alleges:

## FIRST SEPARATE AND ADDITIONAL DEFENSE

### (Failure to State a Claim for Relief)

Plaintiff's claims fail to allege facts sufficient to state a claim for relief against Cisco.

## SECOND SEPARATE AND ADDITIONAL DEFENSE

### (Actions or Conduct of Plaintiff)

Any right of recovery that Plaintiff asserts is barred, either in whole or in part, to the extent that any loss, damage, or injury that Plaintiff has allegedly suffered or will suffer, as alleged in the

ANSWER OF DEFENDANT CISCO SYSTEMS, INC. AND COUNTERCLAIMS; CASE NO. C 08-05391 JW-RS

Complaint or otherwise, is the direct or proximate result, either in whole or in part, of Plaintiff's own intentional, reckless, negligent or careless conduct.

## THIRD SEPARATE AND ADDITIONAL DEFENSE

### (Privilege / Justification)

Cisco's actions were privileged or justified under applicable law, and that Plaintiff therefore is barred from recovery.

## FOURTH SEPARATE AND ADDITIONAL DEFENSE

### (Good Faith / Legitimate Business Justification)

Cisco's actions were undertaken in good faith to advance legitimate business interests and had the effect of promoting, encouraging, and increasing competition.

## FIFTH SEPARATE AND ADDITIONAL DEFENSE

### (Meeting Competition)

Cisco's actions met competition, and therefore each of Plaintiff's claims is barred.

## SIXTH SEPARATE AND ADDITIONAL DEFENSE

### (Estoppel)

Plaintiff is estopped from recovery by reason of its own conduct, acts, and omissions, including the conduct, acts, and omissions alleged in Cisco's counterclaims below.

## SEVENTH SEPARATE AND ADDITIONAL DEFENSE

### (Unclean Hands)

By reasons of Plaintiff's own conduct, acts, and omissions, including the conduct, acts, and omissions alleged in Cisco's counterclaims below, Plaintiff is barred from any recovery under its Fourth and Fifth Claims by the doctrine of unclean hands.

## EIGHTH SEPARATE AND ADDITIONAL DEFENSE

### (Standing)

Plaintiff lacks standing to assert some or all of the claims asserted therein.

Gibson, Dunn & Crutcher LLP

ANSWER OF DEFENDANT CISCO SYSTEMS, INC. AND COUNTERCLAIMS; CASE NO. C 08-05391 JW-RS

## NINTH SEPARATE AND ADDITIONAL DEFENSE

### (Injury-In-Fact / Antitrust Injury)

Plaintiff has not suffered an injury-in-fact or antitrust injury as a result of Cisco's challenged conduct.

## TENTH SEPARATE AND ADDITIONAL DEFENSE

### (Unjust Enrichment)

Plaintiff would be unjustly enriched were it allowed to recover any relief claimed to be due.

## ELEVENTH SEPARATE AND ADDITIONAL DEFENSE

### (Failure to Mitigate Damages)

Plaintiff has failed to mitigate its damages, if any, and that any recovery should be reduced or denied accordingly.

## TWELFTH SEPARATE AND ADDITIONAL DEFENSE

### (Commerce Clause)

Plaintiff's claims arising under state law (Count 4 – Intentional Interference With Prospective Economic Advantage and Contractual Relations and Count 5 – Unfair Competition in Violation of California Business & Professions Code Section 17200) are barred in whole or in part, because the application of these claims to wholly interstate or foreign commerce violates the Commerce Clause of the United States Constitution and is otherwise beyond the scope of jurisdiction of those laws.

## THIRTEENTH SEPARATE AND ADDITIONAL DEFENSE

### (Speculative Damages)

Any damages Plaintiff alleges to have suffered from the matters alleged in the Complaint are too remote or speculative to allow recovery.

## FOURTEENTH SEPARATE AND ADDITIONAL DEFENSE

### (Causation)

Any injuries Plaintiff claims to have suffered were not actually, proximately or materially caused by Cisco's alleged conduct, and Plaintiff therefore should be barred from all recovery or relief.

## FIFTEENTH SEPARATE AND ADDITIONAL DEFENSE

### (Intervening or Superseding Acts of Third Parties)

Any injuries Plaintiff claims to have suffered resulted from the acts or omissions of third parties over whom Cisco had no control.  The acts of such third parties constitute intervening or superseding causes of the harm, if any, suffered by Plaintiff.

## SIXTEENTH SEPARATE AND ADDITIONAL DEFENSE

### (Protection of Patents, Trademarks and Other Rights)

Cisco's actions to protect its patents, trademarks, and other rights were privileged and are immune from suit.

## SEVENTEENTH SEPARATE AND ADDITIONAL DEFENSE

### (No Contractual Relationship)

Plaintiff cannot establish the existence of an existing contract with which Cisco intentionally interfered, and Plaintiff is therefore barred from any recovery on its Fourth Claim for Relief (Intentional Interference With Prospective Economic Advantage and Contractual Relations).

## EIGHTEENTH SEPARATE AND ADDITIONAL DEFENSE

### (No Prospective Business Relationship)

Plaintiff cannot establish the existence of an actual existing prospective business relationship with which Cisco intentionally interfered, and Plaintiff is therefore barred from any recovery on its Fourth Claim for Relief (Intentional Interference With Prospective Economic Advantage and Contractual Relations).

## NINETEENTH SEPARATE AND ADDITIONAL DEFENSE

### (Punitive Damages / Due Process)

The imposition of punitive or exemplary damages in this case would violate the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and state constitutions because the standards of liability for such damages are unduly vague and subjective, and permit retroactive, random, arbitrary, and capricious punishment that serves no legitimate governmental interest.

Gibson, Dunn &
Crutcher LLP

**TWENTIETH SEPARATE AND ADDITIONAL DEFENSE**

**(Punitive Damages / Due Process)**

The imposition of punitive or exemplary damages in this case would violate the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and state constitutions because post-verdict review procedures for scrutinizing punitive damage verdicts do not provide a meaningful constraint on the discretion of juries to impose punishment.

**TWENTY-FIRST SEPARATE AND ADDITIONAL DEFENSE**

**(Punitive Damages / Due Process)**

The imposition of punitive or exemplary damages in this case in the absence of the procedural safeguards accorded to defendants subject to punishment in criminal proceedings, including a reasonable doubt standard of proof, would violate the Fourth, Fifth, and Sixth Amendments and the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

**TWENTY-SECOND SEPARATE AND ADDITIONAL DEFENSE**

**(Punitive Damages / Due Process)**

The imposition of punitive or exemplary damages in this case based upon evidence of Cisco's wealth or financial status would violate the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

**TWENTY-THIRD SEPARATE AND ADDITIONAL DEFENSE**

**(Punitive Damages / Due Process)**

The imposition of punitive or exemplary damages in this case in the absence of a showing of malicious intent to cause harm to Plaintiff would violate the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

**TWENTY-FOURTH SEPARATE AND ADDITIONAL DEFENSE**

**(Punitive Damages / Due Process)**

The imposition of punitive or exemplary damages in this case pursuant to state law to punish Cisco for conduct that occurred outside of that state would violate the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution as well as the Commerce Clause of the Constitution.

Gibson, Dunn &
Crutcher LLP

## TWENTY-FIFTH SEPARATE AND ADDITIONAL DEFENSE

### (Punitive Damages / Excessive Fines)

Any award of exemplary, treble or punitive damages would violate the Excessive Fines Clauses of the United States and state constitutions.

## TWENTY-SIXTH SEPARATE AND ADDITIONAL DEFENSE

### (Punitive Damages / Commerce Clause, Equal Protection and Privileges and Immunities)

The imposition of punitive or exemplary damages in this case based on the out-of-state conduct, profits or aggregate financial status of Cisco would violate the Commerce Clause, the Equal Protection Clause, and the Privileges and Immunities Clause of the United States Constitution.

## TWENTY-SEVENTH SEPARATE AND ADDITIONAL DEFENSE

### (Statutes of Limitations)

Each cause of action in the Complaint is barred to the extent that an applicable statute of limitations has run.

## TWENTY-EIGHTH SEPARATE AND ADDITIONAL DEFENSE

### (Set-Off)

Each cause of action in the Complaint is barred, and the damages related thereto reduced, under the doctrine of set-off.

## TWENTY-NINTH SEPARATE AND ADDITIONAL DEFENSE

### (Additional Defenses)

Cisco has insufficient knowledge or information upon which to form a belief as to whether it may have additional, as yet unstated, separate defenses available.  Cisco's investigation into the Complaint is ongoing, and Cisco therefore reserves the right to plead any other appropriate separate and additional defenses that discovery or further legal analysis may reveal during the course of this litigation.

///

///

///

Gibson, Dunn &
Crutcher LLP

ANSWER OF DEFENDANT CISCO SYSTEMS, INC. AND COUNTERCLAIMS; CASE NO. C 08-05391 JW-RS

1

## **PRAYER FOR ANSWER**

2      WHEREFORE, Cisco prays:

3      1.      That Plaintiff take nothing by the Complaint;

4      2.      That the Complaint be dismissed with prejudice;

5      3.      That Cisco recover its costs of suit incurred herein, including reasonable attorneys'

6  fees; and

7      4.      For any other and further relief as the Court may deem just and proper.

8  ///

9  ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

## COUNTERCLAIMS

Cisco Systems, Inc. ("Cisco") brings these Counterclaims against Plaintiff and Counterdefendants Multiven, Inc. ("Multiven") and Peter Alfred-Adekeye ("Adekeye") and alleges as follows:

1.      Adekeye, a former Cisco employee, founded Multiven in 2005.  Under Adekeye's direction, Multiven has, on multiple occasions, unlawfully accessed, downloaded, used, and distributed Cisco's valuable proprietary information.  Among other unlawful acts, Multiven improperly obtained a Cisco employee's login credentials for password-protected areas of Cisco's website.  Adekeye and Multiven thereafter accessed these areas of Cisco's website and, among other things, illegally downloaded Cisco's copyrighted operating system software for use in its business and, on information and belief, for redistribution to others.  Although Adekeye and Multiven attempted to conceal their improper conduct through the use of fictitious names and other false pretenses, these illegal acts can be traced directly to Adekeye and Multiven.

2.      Multiven also has misrepresented its business to existing and prospective customers through materially false information on its website and, on information and belief, by other means.  Not surprisingly, Multiven does not disclose on its website that its business relies upon misappropriating Cisco's proprietary information, including stealing its operating system software.  Further, Multiven has affirmatively misrepresented, among other things, the size, experience, and certifications of its technical staff.  This misleading practice not only harms customers who are tricked into hiring Multiven only to be disappointed later by Multiven's inferior service, but also harms Cisco and other superior service providers by diverting sales away from them.

3.      Cisco seeks just compensation for Adekeye's and Multiven's misappropriation of Cisco's proprietary information and other illegal business practices, and an injunction to put an end to their improper conduct.

## I.      JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121(a) because claims asserted herein arise under the Copyright Act, 17 U.S.C. § 101, *et seq.,* and the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1125(a).  This Court also has

1    jurisdiction over the state law claims asserted herein on the basis of supplemental jurisdiction

2    pursuant to 28 U.S.C. § 1367.

3        5.      Personal jurisdiction exists generally over Counterdefendant Multiven because it has

4    minimum contacts with this forum as a result of business regularly conducted within the State of

5    California and within this District, including maintaining an office and personnel in California.

6        6.      Personal jurisdiction exists generally over Counterdefendant Adekeye because, during

7    the relevant time period, he was domiciled within the State of California and has minimum contacts

8    with this forum as a result of business regularly conducted within the State of California and within

9    this District.

10       7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial

11   part of the events giving rise to these claims occurred in this District.

12                                  **II.        PARTIES**

13       8.      Cisco Systems, Inc. is, and at all times mentioned herein was, a corporation organized

14   and existing under the laws of the State of California, having a principal place of business at 170 W.

15   Tasman Drive, San Jose, California.

16       9.      Counterdefendant Multiven, Inc. is a Delaware corporation with its principal place of

17   business located at 1700 Seaport Boulevard, Suite 110, Redwood City, California.

18       10.     Counterdefendant Peter Alfred-Adekeye is an individual who was a resident of

19   California at the time of the acts alleged herein.  He is the founder and CEO of Multiven, Inc.

20                          **III.        FACTUAL BACKGROUND**

21   *Cisco's Investment In Its Intellectual Property*

22       11.     Cisco designs, manufactures, and sells Internet Protocol ("IP")-based networking and

23   other products related to the communications and information technology ("IT") industries and

24   provides services associated with these products and their use.  Cisco's customer base spans virtually

25   all types of public and private agencies and businesses, comprising large enterprise companies,

26   service providers, commercial customers, and consumers.

27       12.     Routing technology is used to direct packets of data around an IP network.  Routers

28   interconnect IP networks, moving information such as data, voice, and video from one network to

Gibson, Dunn &
Crutcher LLP

20

ANSWER OF DEFENDANT CISCO SYSTEMS, INC. AND COUNTERCLAIMS; CASE NO. C 08-05391 JW-RS

1   another across metropolitan-area networks ("MANs") and wide-area networks ("WANs").  Cisco

2   offers a broad range of routers, from core network infrastructure for service providers and large

3   businesses to access routers for the service-rich branch office to home network deployments for

4   telecommuters and consumers.  Many of Cisco's routers host a wide range of functions and advanced

5   technologies, delivering integrated voice, video, data, and mobility for homes and businesses.

6        13.    Switching is another integral networking technology used in campuses, branch offices,

7   and data centers to build local-area networks ("LANs"), across cities to build MANs, and across great

8   distances to build WANs.  Cisco's switching products offer many forms of connectivity to end users,

9   workstations, IP phones, access points, and servers, and function as aggregators on LANs, MANs,

10  and WANs.

11       14.    Cisco devotes a tremendous amount of resources to development of new technology

12  and processes.  Cisco's research and development expenditures were $4.1 billion, $4.5 billion, and

13  $5.2 billion in its 2006, 2007, and 2008 fiscal years, respectively.   Cisco's research and development

14  efforts are of paramount importance because the markets in which it competes are subject to rapid

15  technological change, evolving standards, changes in customer requirements, and new product

16  introductions and enhancements.  As a result, Cisco's success depends in significant part upon its

17  ability, on a cost-effective and timely basis, to continue to enhance its existing products, develop, and

18  introduce new products that improve performance, reduce total cost of ownership, and deliver high-

19  quality service to customers.

20       15.    Given the highly-competitive world of IP-based networks, Cisco treats information as a

21  valuable asset; if proprietary information is stolen, the competitive playing field can tip in favor of a

22  competitor that, unlike Cisco, did not expend many billions of dollars to develop the technology.

23  Accordingly, Cisco protects certain information that its services customers can access to support the

24  products they purchase using password and other data protection devices.  Cisco requires those who

25  pay to receive access to services information to use a login unique to each individual user and a

26  separate password, which users to whom Cisco grants access are required to keep confidential.

27  Additionally, once hired, Cisco employees are required to sign a non-disclosure agreement requiring

28  them to maintain the secrecy of their employee passwords and Cisco's proprietary information.

*Adekeye's And Multiven's Misappropriation Of Cisco's Proprietary Information And Tortious Interference With Contract*

16.    Multiven's founder and CEO, Adekeye, was previously employed by Cisco as an engineer in the technical assistance center ("TAC").  TAC is Cisco's award-winning technical support services center, which helps ensure that Cisco's products operate efficiently and remain available.

17.    During his five years as a Cisco employee, Adekeye acquired confidential inside knowledge regarding Cisco's proprietary information, internal operations, security, and personnel. Adekeye's employment with Cisco ended on May 6, 2005.

18.    Even before leaving Cisco, on or about March 2, 2005, Adekeye started Multiven, a company that bills itself as being capable of providing multivendor network maintenance services.

19.    Adekeye and Multiven have on multiple occasions, unlawfully accessed, downloaded, and used Cisco's valuable proprietary information.  For example, they improperly accessed Cisco's restricted-access website to illegally obtain and download among other things, Cisco's copyrighted software, proprietary TAC service resources, trade secrets, and other valuable information.

20.    On or around March 1, 2006, Adekeye and Multiven persuaded a Cisco employee to lend Multiven twenty-five thousand dollars ($25,000.00) through a corporation controlled by the Cisco employee.  The promissory note was "convertible," giving the Cisco employee the right to acquire shares in Multiven.  Adekeye and Multiven exploited this relationship with this Cisco employee to wrongfully obtain the employee's login and password to Cisco's restricted-access website, thereby providing Multiven with unlawful access to Cisco's proprietary information, including its confidential online TAC (service) resources, copyrighted software and updates, and other trade secrets, and proprietary information.  This was a direct violation of the Cisco employee's employment agreement.

21.    Adekeye and Multiven used at least two improper means to learn about Cisco's service techniques and proprietary information, including information regarding Cisco configurations and bug fixes.  First, they illegally accessed Cisco's password-protected website to view Cisco's TAC services resources, some of which are contained in a database rich with technical guidance regarding

ANSWER OF DEFENDANT CISCO SYSTEMS, INC. AND COUNTERCLAIMS; CASE NO. C 08-05391 JW-RS

network configurations and software-related information.  Access to this information was not available to Adekeye and Multiven through legal means, because they, unlike many other companies that provide services for Cisco networking products, chose not to purchase support for those products and, on information and belief, were not acting as agents for companies that had purchased support for the particular devices for which support was being obtained.  Second, Multiven personnel, including Adekeye himself, used false names to disguise their identities when requesting assistance from Cisco's TAC about network configuration issues and bug fixes.

22.   By exploiting the technical information misappropriated from Cisco, Adekeye and Multiven were able to use the Cisco login information to download the Cisco software that Multiven required.  In other words, Adekeye and Multiven relied on Cisco's proprietary information to learn what was required to fix network problems, and then they used the Cisco login information to steal the necessary materials.

23.   Upon information and belief, Adekeye and Multiven have also reproduced and distributed Cisco's copyrighted software and other proprietary information, without authorization and without Cisco's permission or consent.

***Multiven's False Advertising***

24.   On its website, Multiven claims to have customers that include network service providers and Fortune 500 enterprises.  Upon information and belief, however, in its three-year history Multiven has had only a handful of customers.

25.   Multiven, through its website, has made several material misrepresentations meant to deceive customers and attract them away from vendors such as Cisco.  For example, Multiven advertises "Multiven MITAC," which stands for Multivendor Internetwork Technical Assistance Center.  Multiven's website has stated that it has "15,000 on-site support field engineers in 130 countries."  In reality, Multiven has only a handful of employees and has nowhere near 15,000 on-site support field engineers.

26.   On information and belief, Multiven has made additional false statements in other commercial advertisements and promotions, and in discussions with actual and potential customers.

27.     Multiven's false representations regarding its business not only harms customers that are tricked into hiring Multiven only to be disappointed later by Multiven's inferior service, but also harms Cisco and other superior service providers by diverting sales away from them.

## FIRST COUNTERCLAIM

### (Violation of California's Uniform Trade Secrets Act)

### (Against Multiven and Adekeye)

28.     Cisco repeats and realleges the allegations of paragraphs 1 through 34 inclusive above.

29.     Cisco's restricted-access website houses many of Cisco's trade secrets, including source and object code, engineering drawings, ideas, techniques, inventions, new product roadmaps, configurations, tooling, schematics, algorithms, flowcharts, circuits, formulae, mechanisms, customer lists, manufacturing processes, business plans and methods.

30.     Cisco takes regular and reasonable steps to maintain its trade secrets in confidence, including maintaining its trade secrets on a restricted platform with an advanced password protection protocol in place.  The trade secrets that Multiven and Adekeye improperly reviewed and downloaded are valuable to Cisco and are not made available to the general public.

31.     Multiven's and Adekeye's acquisition, disclosure and use of Cisco's trade secrets, without the consent of Cisco, and through improper means, constitutes a misappropriation of those trade secrets.  Multiven and Adekeye had reason to know the trade secrets were acquired through improper means.  Multiven's and Adekeye's conduct violated the California Uniform Trade Secrets Act, California Civil Code § 3426, *et seq.*, and has caused Cisco damages in an amount to be determined at trial.

32.     Cisco is informed and believes, and on that basis alleges, that the actions by Multiven and Adekeye were done willfully and maliciously, and with the intent to injure Cisco.  Moreover, Cisco is informed and believes, and on that basis alleges, that Multiven's and Adekeye's misappropriation of Cisco's confidential data constitutes willful and malicious misappropriation.  By reason thereof, Cisco is entitled to exemplary damages, in addition to compensatory damages and/or restitution for Multiven's and Adekeye's unjust enrichment caused by its misappropriation, as permitted by law.

ANSWER OF DEFENDANT CISCO SYSTEMS, INC. AND COUNTERCLAIMS; CASE NO. C 08-05391 JW-RS

Gibson, Dunn &
Crutcher LLP

33.     Multiven and Adekeye concealed their illegal and otherwise improper conduct.  As a result, Cisco, despite reasonable efforts and precautions, did not begin to discover Multiven's and Adekeye's conduct until 2008.

34.     Injunctive relief is necessary because Multiven and Adekeye threaten to continue to do the acts complained of herein, and unless restrained and enjoined, will continue to do so, all to Cisco's irreparable harm.  It would be difficult to ascertain the amount of compensation that could afford Cisco adequate relief for such continuing acts, and a multiplicity of judicial proceedings would be required.  Cisco's remedy at law is not adequate to compensate it for injuries threatened.

### SECOND COUNTERCLAIM

#### (Conversion)

#### (Against Multiven and Adekeye)

35.     Cisco repeats and realleges the allegations of paragraphs 1 through 34 inclusive above.

36.     Cisco owns the proprietary information found on its internal websites, which includes Cisco software.  Multiven and Adekeye wrongfully took Cisco's property.

37.     In wrongfully taking the confidential, proprietary, and/or trade secret information, Multiven and Adekeye have interfered with Cisco's right to own and possess that property, and have harmed Cisco.  Multiven's and Adekeye's conduct has caused Cisco damages in an amount to be determined at trial.

38.     Multiven and Adekeye concealed their illegal and otherwise improper conduct.  As a result, Cisco, despite reasonable efforts and precautions, did not begin to discover Multiven's and Adekeye's conduct until 2008.

39.     Cisco is informed and believes, and on that basis alleges, that Multiven's and Adekeye's actions were done fraudulently, oppressively, willfully and maliciously, and with the intent to injure Cisco.  By reason thereof, Cisco is entitled to punitive damages, in addition to compensatory damages, as permitted by law.

### THIRD COUNTERCLAIM

### (Tortious Interference with Contract)

### (Against Multiven and Adekeye)

40.     Cisco repeats and realleges the allegations of paragraphs 1 through 39 inclusive above.

41.     Multiven and Adekeye were aware of the valid existing contracts between Cisco and its employees requiring employees to keep Cisco proprietary information confidential.  Adekeye, Multiven's CEO, was a former Cisco employee, and therefore was fully aware of these employee confidentiality agreements.

42.     By intentionally seeking out a current Cisco employee to obtain his employee password in spite of the existing non-disclosure agreement between Cisco and the Cisco employee, Multiven and Adekeye intended to induce the breach of that agreement.  Multiven's and Adekeye's interference caused the Cisco employee to breach his contract with Cisco.  If not for Multiven's and Adekeye's wrongful actions, the contract would have been performed and Multiven and Adekeye would not have wrongfully acquired the Cisco employee's confidential login and password.  Multiven's and Adekeye's tortious interference has caused Cisco damages in an amount to be determined at trial.

43.     Multiven and Adekeye concealed their illegal and otherwise improper conduct.  As a result, Cisco, despite reasonable efforts and precautions, did not begin to discover Multiven's and Adekeye's conduct until 2008.

44.     Cisco is informed and believes, and on that basis alleges, that Multiven's and Adekeye's actions were done oppressively, willfully and maliciously, and with the intent to injure Cisco.  By reason thereof, Cisco is entitled to punitive damages, in addition to compensatory damages, as permitted by law.

### FOURTH COUNTERCLAIM

### (Copyright Infringement:  Infringement of Cisco's

### Reproduction Right in Violation of 17 U.S.C. § 106(1))

### (Against Multiven and Adekeye)

45.     Cisco repeats and realleges the allegations of paragraphs 1 through 44 inclusive above.

46.     Cisco owns valid registered copyrights in its software.  Upon information and belief, without obtaining a license from Cisco, Multiven and Adekeye downloaded Cisco's software. Multiven's and Adekeye's download of Cisco's copyrighted software unlawfully infringed upon Cisco's registered copyrights and its exclusive right to reproduce under the Copyright Act in violation of 17 U.S.C. § 106(1).

47.     Each infringement of Cisco's rights in its copyrighted software constitutes a separate and distinct act of infringement separately actionable under the Copyright Act.

48.     Multiven's and Adekeye's acts of infringement are willful, intentional and purposeful, in violation of Cisco's rights.

49.     Multiven and Adekeye concealed their illegal and otherwise improper conduct.  As a result, Cisco, despite reasonable efforts and precautions, did not begin to discover Multiven's and Adekeye's conduct until 2008.

50.     Multiven's and Adekeye's acts of infringement have caused Cisco damages in an amount to be determined at trial.

51.     As a direct and proximate result of Multiven's and Adekeye's infringement of Cisco's copyrights and its exclusive rights under the Copyright Act, Cisco is entitled to recover the maximum statutory damages, pursuant to 17 U.S.C. § 504(c) in the amount of $150,000 with respect to each work infringed, or other such amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Cisco's election, pursuant to 17 U.S.C. § 504(b), Cisco shall be entitled to its actual damages, including Multiven's and Adekeye's profits from infringement, as will be proven at trial.

52.     Cisco is further entitled to an award of its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

53.     Multiven's and Adekeye's conduct is causing and, unless enjoined by this Court, will continue to cause Cisco severe and irreparable harm that cannot be fully compensated or measured in terms of money, and for which Cisco does not have an adequate remedy at law.  Cisco is entitled to an injunction under 17 U.S.C. § 502 prohibiting the continued infringement of Cisco's copyrights and its exclusive rights under the Copyright Act.  Cisco is also entitled under 17 U.S.C. § 503 to an order

directing the impoundment, destruction or other reasonable disposition of all infringing copies of Cisco's copyrighted software.

### FIFTH COUNTERCLAIM

**(Copyright Infringement:  Infringement of Plaintiffs'**

**Distribution Right in Violation of 17 U.S.C. § 106(3))**

**(Against Multiven and Adekeye)**

54.     Cisco repeats and realleges the allegations of paragraphs 1 through 53 inclusive above.

55.     Cisco owns a valid registered copyright in its software.  Upon information and belief, Multiven and Adekeye distributed Cisco's software to others without authorization and without Cisco's permission or consent.  Multiven's and Adekeye's distribution of Cisco's copyrighted software unlawfully infringes upon Cisco's registered copyrights and its exclusive right to distribute under the Copyright Act in violation of 17 U.S.C. § 106(3).

56.     Each infringement of Cisco's rights in its copyrighted software constitutes a separate and distinct act of infringement separately actionable under the Copyright Act.

57.     Multiven's and Adekeye's acts of infringement are willful, intentional and purposeful, in violation of Cisco's rights.

58.     Multiven and Adekeye concealed their illegal and otherwise improper conduct.  As a result, Cisco, despite reasonable efforts and precautions, did not begin to discover Multiven's and Adekeye's conduct until 2008.

59.     Multiven's and Adekeye's acts of infringement have caused Cisco damages in an amount to be determined at trial.

60.     As a direct and proximate result of Multiven's and Adekeye's infringement of Cisco's copyrights and its exclusive rights under the Copyright Act, Cisco is entitled to recover the maximum statutory damages, pursuant to 17 U.S.C. § 504(c) in the amount of $150,000 with respect to each work infringed, or other such amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Cisco's election, pursuant to 17 U.S.C. § 504(b), Cisco shall be entitled to its actual damages, including Multiven's and Adekeye's profits from infringement, as will be proven at trial.

61.     Cisco is further entitled to an award of its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

62.     Multiven's and Adekeye's conduct is causing and, unless enjoined by this Court, will continue to cause Cisco severe and irreparable harm that cannot be fully compensated or measured in terms of money, and for which Cisco does not have an adequate remedy at law.  Cisco is entitled to an injunction under 17 U.S.C. § 502 prohibiting the continued infringement of Cisco's copyrights and its exclusive rights under the Copyright Act.  Cisco is also entitled under 17 U.S.C. § 503 to an order directing the impoundment, destruction or other reasonable disposition of all infringing copies of Cisco's copyrighted software.

## SIXTH COUNTERCLAIM

### (False Advertising in Violation of 15 U.S.C. § 1125(a))

### (Against Multiven)

63.     Cisco repeats and realleges the allegations of paragraphs 1 through 62 inclusive above.

64.     Multiven has made multiple false statements of fact on its website, and, on information and belief, in other commercial advertisements and promotions, concerning the scope of its services.

65.     For example, Multiven, through its website, has made several material misrepresentations meant to deceive customers and attract them away from vendors such as Cisco. Multiven advertises "Multiven MITAC," which stands for Multivendor Internetwork Technical Assistance Center.  Multiven's website has stated that it has "15,000 on-site support field engineers in 130 countries."  In reality, Multiven has only a handful of employees and has nowhere near 15,000 on-site support field engineers.

66.     On information and belief, Multiven has made additional false statements in other commercial advertisements and promotions, and in discussions with actual and potential customers.

67.     Multiven's false statements have the tendency to deceive a substantial segment of its audience.  On information and belief, Multiven's false statements have actually deceived Multiven customers and potential customers.

68.     Multiven's false statements are likely to influence customers' purchasing decisions.

69.     Multiven's false statements have entered interstate commerce.

70.     Cisco has been injured as a result of Multiven's false statement by direct diversion of sales from Cisco to Multiven. Multiven's conduct has caused Cisco damages in an amount to be determined at trial.

71.     Multiven's false statements have caused and will cause Cisco damage and other irreparable injury for which it does not have an adequate remedy at law.

72.     Multiven's activities entitle Cisco to recover its actual damages and Multiven's profits in an amount to be proven at trial, together with Cisco's attorneys' fees and costs.

73.     Furthermore, Cisco is entitled to a permanent injunction to prevent future violations of 15 U.S.C. § 1125.

### SEVENTH COUNTERCLAIM

**(Unfair Competition Under Business & Professions Code § 17200)**

**(Against Multiven and Adekeye)**

74.     Cisco repeats and realleges the allegations of paragraphs 1 through 73 inclusive above.

75.     Section 17200 *et seq.* of the California Business & Professions Code proscribes three varieties of unfair competition – acts that are unlawful, unfair, or fraudulent. The statute's intent and purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.

76.     Cisco is a "person" within the meaning of California Business & Professions Code Section 17201.

77.     As alleged herein, Multiven's and Adekeye's conduct is "unlawful." Within the meaning of Section 17200, virtually any violation of any civil or criminal federal, state, municipal, statutory, regulatory, or local law can serve as a predicate for an "unlawful" claim. Multiven's and Adekeye's conduct was unlawful because, among other reasons, it violated the California Uniform Trade Secrets Act, the laws prohibiting conversion and interference with contract, the Copyright Act, and the Lanham Act.

78.     As alleged herein, Multiven's and Adekeye's conduct is also "fraudulent." Multiven and Adekeye deceived Cisco by, among other things, obtaining proprietary information through

improperly obtained login information for Cisco's restricted-access website and through misrepresentations to Cisco's TAC.

79.     Further, Multiven's false statements regarding the size, experience, and other aspects of its business on its website, advertisements, promotions and discussions with actual and potential customers, are fraudulent within the meaning of Section 17200, as members of the public are likely to be deceived and actually were deceived.

80.     As alleged herein, Multiven's and Adekeye's conduct constitutes "unfair" business practices.  A practice may be deemed unfair even if not specifically proscribed by some other law. Among other things, Multiven and Adekeye have engaged in "unfair" business practices by obtaining Cisco's proprietary information.  Multiven's false statements regarding the size, experience, and other aspects of its business on its website, advertisements, promotions and discussions with actual and potential customers, are unfair within the meaning of Section 17200.

81.     By reason of, and as a direct and proximate result of Multiven's and Adekeye's unfair, unlawful and fraudulent practices and conduct, Cisco has suffered and will continue to suffer, financial injury to its business and property in an amount to be determined at trial.

82.     Multiven and Adekeye concealed their illegal and otherwise improper conduct.  As a result, Cisco, despite reasonable efforts and precautions, did not begin to discover Multiven's and Adekeye's conduct until 2008.

83.     The entry of a permanent and mandatory injunction against Multiven and Adekeye is necessary to enjoin Multiven's and Adekeye's ongoing unlawful, unfair and/or fraudulent business practices.  Cisco is also entitled to disgorgement of profits earned as a result of Multiven's and Adekeye's unfair, unlawful and fraudulent business practices.

## **PRAYER FOR RELIEF**

WHEREFORE, Cisco prays for judgment as follows:

1.     That Multiven takes nothing by reason of the complaint on file herein;

2.     That Multiven's request for injunctive relief be denied;

3.     That Multiven's Complaint be dismissed in its entirety with prejudice;

4.  On all of Cisco's Causes of Action, injunctive relief (1) precluding Multiven and Adekeye from taking any further action to solicit or seek Cisco employees' confidential passwords, (2) precluding Multiven and Adekeye from taking any further action to solicit or seek Cisco's non-public information, (3) requiring the return of any of Cisco's non-public information held by Multiven and Adekeye and the destruction of any materials derived from any of Cisco's non-public information, (4) precluding Multiven and Adekeye from any action that would use or disseminate any of Cisco's non-public information; (5) prohibiting the continued infringement of Cisco's copyrights and its exclusive rights under the Copyright Act; (6) prohibiting the continued misappropriation of Cisco's trade secrets; and (7) prohibiting future violations of 15 U.S.C. § 1125;

5.  On Cisco's First, Second, and Third causes of action, damages according to proof;

6.  On Cisco's First and Second Causes of Action, an order for replevin and return of the data wrongfully appropriated from Cisco;

7.  On Cisco's First Cause of Action, recovery for the unjust enrichment resulting from Multiven's and Adekeye's misappropriation as provided in California Civil Code § 3426.3;

8.  On Cisco's First Cause of Action, reasonable attorneys fees for Multiven's and Adekeye's willful and malicious misappropriation as provided in California Civil Code § 3426.4;

9.  On Cisco's Fourth and Fifth Causes of Action, statutory damages pursuant to 17 U.S.C. § 504(c), or, at Cisco's election, actual damages pursuant to 17 U.S.C. § 504(b), including Multiven's and Adekeye's profits from infringement, as will be proven at trial;

10. On Cisco's Fourth and Fifth Causes of Action, attorneys' fees and full costs, pursuant to 17 U.S.C. § 505;

11.   On Cisco's Fourth and Fifth Causes of Action, an order pursuant to 17 U.S.C. § 503 requiring the impounding, destruction, or other reasonable disposition of all infringing copies of Cisco's copyrighted software;

12.   On Cisco's Sixth Cause of Action, actual damages, disgorgement of profits in an amount to be proven at trial, and attorneys' fees and costs pursuant to 15 U.S.C. § 1117;

13.   On Cisco's Seventh cause of action, disgorgement of profits earned as a result of Multiven's and Adekeye's unlawful, unfair and/or fraudulent business practice;

14.   For punitive and exemplary damages as provided by law;

15.   For costs of suit incurred herein; and

16.   For such other and further relief as the court deems just and proper.

## DEMAND FOR JURY TRIAL

Cisco hereby demands a trial by jury on all issues triable to a jury, including Plaintiff's claims and Cisco's counterclaims.

DATED:  May 18, 2009

GIBSON, DUNN & CRUTCHER LLP
Robert E. Cooper
George A. Nicoud III
Austin Schwing
Lindsey E. Blenkhorn


By:_____/s/ George A. Nicoud III_____
George A. Nicoud III

Attorneys for Defendant and Counterclaimant
CISCO SYSTEMS, INC.

100654835_4.DOC

Gibson, Dunn &
Crutcher LLP

33