**\*\* E-filed February 16, 2010 \*\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MULTIVEN, INC., a Delaware corporation,<br><br>　　　　Plaintiff,<br>　v.<br>CISCO SYSTEMS, INC., a California corporation,<br><br>　　　　Defendant.<br>_____<br>AND RELATED COUNTERCLAIMS<br>_____/ | No. C08-05391 JW (HRL)<br><br>**ORDER GRANTING CISCO SYSTEMS, INC.'S DISCOVERY MOTION**<br><br>**[Re: Docket No. 76]** |

　　　　Plaintiff Multiven, Inc. ("Multiven"), a provider of service and maintenance support for router and networking systems, sued defendant Cisco Systems, Inc. ("Cisco"), a leading provider of Internet Protocol-based networking technologies, alleging violations of the Sherman Antitrust Act and related state claims. Cisco then countersued Multiven as well as Pingsta, Inc. ("Pingsta") and Peter Alfred-Adekeye, a former Cisco employee and current Chief Executive Officer for Multiven and Pingsta. Cisco's counterclaims allege copyright infringement, violation of the Computer Fraud and Abuse Act, false advertising in violation of the Lanham Act, and related state claims.[1]

　　　　Cisco now moves to limit the scope of a nondisclosure agreement ("NDA") between Multiven and third-party James Light. It also moves for relief from the seven-hour limit for Light's

///

---

[1] In this motion, the court will refer to all three counterdefendants simply as "Multiven."

deposition. Multiven opposes the motion. Upon consideration of the moving and responding papers, as well as the arguments presented at the motion hearing, this court grants Cisco's motion.

## DISCUSSION

### A. Background of James Light

Light was Multiven's Vice President of Sales on a contract basis from October 2008 to February 2009. He alleges that after he told Multiven that he disagreed with the lawsuit it filed against Cisco, Adekeye terminated his consulting agreement and asked him to destroy all Multiven data and information in his possession. After his termination, Light claims he contacted Multiven's outside counsel expressing concerns he had about Adekeye and what he believed were criminal and fraudulent activities, but that he received no response. (*Id.* ¶¶ 5, 10, 39, 42, 43, Ex. 4.)

At some point, Light then voluntarily approached Cisco to disclose information about Multiven "because [he] felt morally obligated to do so." (*Id.* ¶ 56.) Soon thereafter, he received an email from Multiven's in-house counsel, Matthew Goldberg, indicating that Multiven had learned he had talked to Cisco. Goldberg reminded Light of the NDA he had signed and stated that Multiven would "enforce its rights to the full extent of the law" if Light had breached the NDA. Goldberg asserted that "in addition to business, technical, financial, and customer information, any information related to [Multiven] employees that you only know because of your work with [Multiven] is Confidential" pursuant to the NDA.[2] (*Id.* at Ex. 2.) However, Multiven did not move for a protective order to prevent Light's communications with Cisco, nor, apparently, carry out its threat of other legal action against him.

### B. Seven-Hour Deposition Limit

Both Cisco and Multiven have a strong desire to depose Light, and they intend to conduct jointly his deposition. Cisco moves for leave to extend this deposition beyond the seven-hour limit set forth in the Federal Rules. *See* Fed. R. Civ. P. 30(d). Specifically, Cisco requests a nine-hour deposition, with the first four hours allocated to it and the remaining five hours allocated to Multiven. Multiven does not oppose extending the time, but seeks a range of seven to fourteen

---

[2] In light of the discussion that follows concerning the NDA, it is interesting that Goldberg apparently said nothing to Light about his alleged membership in Multiven's control group or his disclosure of privileged information.

2

hours, with it receiving six to seven hours of that time. Regardless of the total time, it wishes to depose Light first and argues that Cisco should get only one-quarter of the available time.

Under the circumstances, where a third-party witness is key to both Cisco's counterclaims and Multiven's defenses to the same, an extension of the deposition time limit is appropriate. Light has apparently agreed to a nine-hour deposition, and Multiven has not convinced the court that a longer period is necessary. Given this nine-hour limit, a fair division of time between the parties is five hours for Multiven and four hours for Cisco. Multiven may begin Light's deposition, but the parties may split their respective blocks of time into several alternating periods, if they so choose.

**B.     Nondisclosure Agreement**

The remainder of Cisco's motion concerns Light's NDA with Multiven. On account of this NDA, Cisco asks in this motion for legal "cover" to interview and depose Light on topics concerning its counterclaims against Multiven. Yet Multiven, at the eleventh hour, tries to turn Cisco's request into its *own* motion to bar Cisco from conducting *any* deposition or interview with Light on account of its allegation of improper behavior by Cisco's counsel. As discussed below, Multiven's belated attempt to shift the focus of *this* motion fails.

Cisco wants to depose Light and conduct pre- and post-deposition interviews with him concerning fifteen topics that it says are relevant to its allegations that Multiven has engaged in fraudulent and potentially criminal acts. However, it is concerned that Light will be unable to do so on account of the NDA, which reads:

> Consultant agrees that all Inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees) Consultant develops, learns or obtains during the period over which Consultant is to be providing services that relate to Company or the business or demonstrably anticipated business of Company or that are received by or for Company in Confidence, constitute "Proprietary Information." Consultant will hold in confidence and not disclose or, except in performing the Services, use any Proprietary Information.

(Light Decl. Ex. 1.) Cisco argues that this NDA is impermissibly overbroad because it seeks to protect more than Multiven's legitimate trade secrets, and that public policy prohibits Multiven from using it to block Light's testimony. Cisco therefore asks the court to declare that its proposed fifteen topics are outside the scope of the NDA.

///

3

In its opposition brief, Multiven primarily argued that Cisco failed to provide evidence that Multiven had engaged in any wrongdoing and that public policy does not support limiting the scope of the NDA. Nonetheless, by the time of the motion hearing, Multiven's opposition had shifted away from one based on a lack of evidence of its alleged wrongdoing and public policy. In fact, Multiven abandoned any argument that the NDA would or should bar Light's testimony as to Cisco's proposed topics.

Instead, Multiven now argues that Light was a member of Multiven's control group, that Cisco had impermissible ex parte contacts with Light, that Cisco's attorneys should be disqualified, and that—in the meantime—they should not be talking to or deposing Light at all. Multiven barely hinted at this argument in its opposition brief. Yet now, it asserts that this is *the* main issue of dispute in this motion. To that end, mere days before the hearing on the instant motion, Multiven moved to disqualify Cisco's counsel (Docket No. 89) and moved to continue the hearing on the instant motion until after the court decides its disqualification motion (Docket No. 103).[3]

Multiven's belated argument is nothing more than a stealth motion to stay Light's deposition without filing an appropriate motion for such relief before this court (instead, it tucked in a request for a stay of discovery as part of its motion to disqualify). To be clear: the instant motion is *not* a motion to disqualify Cisco's counsel, nor a motion to stay discovery and Light's deposition, nor a motion for a protective order on privilege grounds. As a result, the court is not ruling on the issue of privilege today. Furthermore, Multiven has failed to convince the court that it would suffer genuine prejudice if Cisco were allowed to interview or depose Light while its motion to disqualify is pending. Even if the court were ultimately to grant the motion to disqualify counsel, surely it could also craft an appropriate remedy to protect Multiven's legitimate interests.

## CONCLUSION

It is an "unremarkable proposition" that an NDA "will not stand as a barrier to discovery between two parties in litigation." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 922 (D. Nev. 2006). Indeed, at the motion hearing, Multiven folded its tent as to its arguments to the contrary. It

---

[3] Multiven's motion to disqualify was originally noticed before Judge Ware and set for April 12, 2010. Judge Ware later referred the motion to this court for a Report and Recommendation. (Docket No. 127.) The hearing on the motion is set now for March 30, 2010.

4

not only conceded that Cisco's fifteen proposed topics were appropriate, but also that the NDA was not so broad to prevent Light's testimony on the topics—thus making the NDA irrelevant for purposes of this motion.[4] Under these circumstances, the court GRANTS Cisco's motion as follows: it may depose and conduct pre- and post-deposition interviews with Light as to its fifteen proposed topics of interest. The court declines to extend this order to other witnesses at this time.

**IT IS SO ORDERED.**

Dated: February 16, 2010

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

---

[4] The court notes that is unlikely that the NDA, if it were challenged, would be upheld to prohibit Light's testimony on these topics. Interpreting the NDA to mean that Light could not disclose non-confidential information he learned while at Multiven could stifle all legitimate discovery. In addition, there even may be situations where disclosure of trade secrets and truly confidential information is necessary in the interests of justice and full and fair disclosure.

5

**C08-05391 JW (HRL) Notice will be electronically mailed to:**

| | |
|---|---|
| Brian Curtis Vanderhoof | bvanderhoof@ropers.com |
| Dan Keith Webb | dwebb@winston.com |
| Donald Ross Pepperman | dpepperman@blechercollins.com, ljaramillo@blechercollins.com |
| James C. Potepan | jpotepan@ropers.com, jcecchini@ropers.com, tpierson@ropers.com |
| Maxwell Michael Blecher | mblecher@blechercollins.com |
| Michael Sungwoo Kim | mkim@rmkb.com |
| Patrick Martin Ryan | pryan@winston.com, DocketSF@winston.com, mthomasian@winston.com, ndelich@winston.com, tmontague@winston.com |
| Thomas Michael O'Leary | to'leary@ropers.com, aarriola@roprs.com, cscranton@rmkb.com, kkakiuchi@ropers.com, mkim@rmkb.com, tpierson@rmkb.com |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**