Dan K. Webb (*pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL  60601
Telephone:     (312) 558-5600
Facsimile:     (312) 558-5700
dwebb@winston.com

Patrick M. Ryan (SBN: 203215)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA  94111-5894
Telephone:     (415) 591-1000
Facsimile:     (415) 591-1400
pryan@winston.com

Attorneys for Defendant and Counterclaimant
CISCO SYSTEMS, INC. and Counterclaimant
CISCO TECHNOLOGY, INC.

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| MULTIVEN, INC., a Delaware corporation<br><br>          Plaintiff,<br><br>     v.<br><br>CISCO SYSTEMS, INC., a California corporation<br><br>          Defendant.<br><br>CISCO SYSTEMS, INC., a California corporation, and CISCO TECHNOLOGY, INC., a California corporation<br><br>          Counterclaimants,<br><br>     v.<br><br>MULTIVEN, INC., a Delaware corporation, PINGSTA, INC., a Delaware corporation, and PETER ALFRED-ADEKEYE, an individual<br><br>          Counterdefendants. | **Case No. 5:08-cv-05391-JW-RS**<br><br>**DECLARATION OF PATRICK M. RYAN IN SUPPORT OF CISCO'S OPPOSITION TO THE MOTION BY MULTVEN, INC., PINGSTA, INC., PETER ALFRED-ADEKEYE, AND DEKA YUSSUF TO QUASH OR MODIFY SUBPOENAS AND FOR PROTECTIVE ORDER.** |

I, Patrick M. Ryan, declare as follows:

1. I am a member in good standing of the State Bar of California and a Partner with Winston & Strawn LLP, attorneys for Defendant and Counterclaimant Cisco Systems, Inc. and Counterclaimant Cisco Technology, Inc. in the above-entitled action. I have personal knowledge of the facts set forth herein, except where noted, and, if called to testify, could and would competently testify thereto.

2. On February 12, 2010, I visited the California Secretary of State website and looked up the business entities Multiven, Inc. and Pingsta, Inc. Mr. Adekeye is listed as the agent for service of process for both Multiven, Inc. and Pingsta, Inc. According to the website, Multiven, through Mr. Adekeye, can be served at 1700 Seaport Boulevard, Suite 110, Redwood City, California, 94063. Attached hereto as Exhibit "A" are true and correct copies of the California Secretary of State Business Entity Detail for Multiven, Inc. and Pingsta, Inc. listing Mr. Adekeye as the agent for service of process.

3. On January 26, 2010, four days after putting the parties on notice that I was going notice the depositions of Multiven's 30(b)(6) witness and Mr. Adekeye (as an officer of Multiven and Pingsta and as an individual defendant) and Ms. Yussuf (as Multiven and Pingsta's Vice President) for an agreed-upon week in March 2010, I caused to be personally served via a messenger service six deposition notices and subpoenas all with March deposition dates. Attached hereto as Exhibit "B" are true and correct copies of the proofs of service.

4. According to Multiven's initial disclosures, Ms. Yussuf, Multiven's Executive Vice President Business Development, is one of six people — along with her husband Mr. Adekeye — who has "knowledge concerning the nature of Multiven's business and service offerings; Cisco's business practices; the conditions on the availability of Cisco networking equipment operating system software updates/bug fixes and Multiven lost business opportunities/customers". Attached hereto as Exhibit "C" is a true and correct copy of Multiven's initial disclosures dated June 19, 2009.

5. On November 13, 2009, I contacted Mr. Adekeye's counsel to set up a mutually convenient date for Mr. Adekeye's deposition. I sent this request by e-mail and U.S. mail and

-1-

1 requested counsel provide available dates prior to November 30. Attached hereto as Exhibit "D" is a true and correct copy of this November 13, 2009 letter.

6. On November 17, 2009, Mr. Pepperman responded on behalf of Mr. Adekeye. He did not mention that Mr. Adekeye could not enter the United States nor that Ms. Yussuf had the same limitation. Rather, he asked for additional information before he could meet-and-confer about scheduling the deposition and stated that in any event, it was "unlikely that Mr. Adekeye can appear for deposition before the end of November" due to the "Thanksgiving holiday and other commitments." Attached hereto as Exhibit "E" is a true and correct copy of this November 17, 2009 letter.

7. On November 17, 2009, I immediately sought to accommodate the Thanksgiving holiday and other commitments by proposing five dates after Thanksgiving for Mr. Adekeye's deposition: November 30, December 1, December 3, December 4 and December 7. Attached hereto as Exhibit "F" is a true and correct copy of this November 17, 2009 letter.

8. Subsequently, on November 17, 2009, Mr. Pepperman responded by accusing Cisco of "neglect[ing] . . . to request that counsel for the parties participate in . . . a consultation as required by Local Rule 30-1" and demanding that the parties meet-and-confer by telephone. Attached hereto as Exhibit "G" is a true and correct copy of this November 17, 2009 letter.

9. That same day, on November 17, 2009, the parties participated in a telephonic meet-and-confer. On that call, Mr. Pepperman announced for the first time that Mr. Adekeye was out of the country on business and was unwilling to return for a deposition on the requested date. Mr. Pepperman said nothing about the possibility that Mr. Adekeye may not be able to reenter the United States due to potential problems with his visa. Mr. Pepperman made the following alternative proposals: (1) he would produce Mr. Adekeye for deposition in London, England on December 10 or December 11, but Cisco would have to pay all of its own costs for travel and for the foreign deposition; (2) he would produce Mr. Adekeye for a video deposition, but he recommended against a video tape deposition because he said that Mr. Adekeye has a strong accent and is very difficult to understand over the telephone; or (3) he would produce Mr. Adekeye for deposition in

-2-

San Francisco no earlier than late January 2010.

10.  By letter dated November 18, 2009, I explained at length why these proposals were unacceptable and noticed Mr. Adekeye's deposition for December 11, 2009 in San Francisco, California. Per standing agreement between the parties, I served the deposition notice both by e-mail and by U.S. mail.  Attached hereto as Exhibit "H" is a true and correct copy of this November 18, 2009 letter and the notice of deposition of Plaintiff and Counterdefendant Peter Alfred-Adekeye.

11.  On November 19, 2009, Mr. Pepperman responded to Cisco's deposition notice by letter. For the first time, he informed me that Mr. Adekeye allegedly cannot enter the United States due to visa problems and therefore, he cannot produce Mr. Adekeye for deposition in San Francisco. Specifically, he explained that although Mr. Adekeye "is a citizen of the United Kingdom," "Mr. Adekeye does not currently have a visa that would permit his attendance at a deposition in San Francisco." To that end, Mr. Pepperman proposed deferring the deposition until January or February 2010 in order to allow Mr. Adekeye sufficient time to obtain a visa. Attached hereto as Exhibit "I" is a true and correct copy of this November 19, 2009 letter.

12.  On November 24, 2009, I responded to Mr. Pepperman's letter by asking ten questions as follows: (1) What is the first date by which you can guarantee that Mr. Adekeye will be available for deposition in the San Francisco Bay Area? (2) Why can't Mr. Adekeye obtain a visa to travel to the United States sooner than January/February 2010? (3) What efforts has Mr. Adekeye taken to obtain a visa to travel to the United States by December 11, 2009, the date noticed for his deposition? (4) Was Mr. Adekeye residing outside of the United States on the date that Multiven filed the initial complaint in this action? (5) When did Mr. Adekeye's legal right to reside in the United States expire? (6) When was the last date Mr. Adekeye was physically present in the United States? (7) Are you willing to advance Cisco's counsel $50,000 in expenses for taking Mr. Adekeye's deposition in London, England, subject to refund should the costs be less? (8) Do you guarantee that Mr. Adekeye will physically appear at the trial in this action? (9) When will you be producing responsive documents? (10) Will you produce all responsive documents prior to his deposition? Attached hereto as Exhibit "J" is a true and correct copy of this November 24, 2009

-3-

1 letter.

2     13. Also on November 24, 2009, Mr. Pepperman responded by assuring me that "once Mr. Adekeye obtains the requisite visa, he will be made available for deposition at your office in San Francisco," and estimated that Mr. Adekeye would be able to obtain a visa by "late-January or early-February." As to the Ten Questions, Mr. Pepperman promised that answers would be forthcoming. Attached hereto as Exhibit "K" is a true and correct copy of this November 24, 2009 letter.

    14. On November 30, 2009, I offered to move Mr. Adekeye's deposition to early-February as long as Mr. Pepperman provided me with a copy of Mr. Adekeye's visa application to confirm that the process for obtaining a visa had been initiated and asked Mr. Pepperman to tell me when Mr. Adekeye's visa interview was scheduled. Assuming that the parties could reach an agreement (especially because Mr. Pepperman promised to produce Mr. Adekeye in San Francisco and estimated that he could do so by February), I let Mr. Pepperman know that I had blocked out the first five days of February to accommodate Mr. Adekeye's schedule and stated "the only thing left to do is select a date." Attached hereto as Exhibit "L" is a true and correct copy of this November 30, 2009 letter.

    15. On December 1, 2009, in response to my November 30 letter, Mr. Pepperman's colleague, Mr. Kim, forwarded a document to me captioned "Declaration of Hilla R. Nattiv in Support of Counterdefendant Peter Alfred-Adekeye's Motion for Protective Order Continuing his Deposition." The declaration is attached to Mr. Kim's declaration and can be found at Docket Entry 129-3.

    16. Later that day, after Mr. Pepperman sent me Ms. Nattiv's declaration, the parties met and conferred by telephone. On December 2, 2009, I agreed to take the December 11, 2009 deposition off calendar to see if the issue with Mr. Adekeye's visa and the deposition dispute surrounding it could be resolved, so that Mr. Adekeye's deposition could proceed in this District some time in February or March. Attached hereto as Exhibit "M" is a true and correct copy of the December 1–2, 2009 email exchange.

    17. During this telephonic meet-and-confer, though I had specifically asked about the date

-4-

of Mr. Adekeye's visa interview, Mr. Pepperman did not tell me that four days earlier, Mr. Adekeye had "attend[ed] a visa interview on Friday, November 27, 2009," and learned that his visa request "was denied based upon [his] pending appeal." At no point during this meet-and-confer telephone call did Mr. Pepperman repudiate his previous assertion that Mr. Adekeye would be made available for deposition within 60-90 days. Further, at that time, Mr. Pepperman failed to inform me that Ms. Yussuf was facing the same visa challenges.

18. On December 3, 2009, Mr. Pepperman sent a letter to me reneging on his agreement to answer the Ten Questions because he believed the issues were addressed in the "meet-and-confer session on December 1, 2009 and the Declaration provided to you from Mr. Adekeye's immigration attorney." Between the meet-and-confer session and the Nattiv declaration, Mr. Pepperman informed me that Mr. Adekeye could not attend a deposition in the United States until February 2010 because his visa had been revoked, a decision he was currently in the process of appealing. Mr. Pepperman also stated that his client was unwilling to advance Cisco $50,000 in expenses for taking Mr. Adekeye's deposition in London. Attached hereto as Exhibit "N" is a true and correct copy of this December 3, 2009 letter.

19. Seven of the Ten Questions remained unanswered, as I explained to Mr. Pepperman that same day. Attached hereto as Exhibit "O" is a true and correct copy of this December 3, 2009 letter.

20. I first noticed the deposition of Ms. Yussuf on December 29, 2009.

21. On January 5, 2010, Mr. O'Leary wrote a letter complaining that the deposition notice for Ms. Yussuf was improper because I failed to meet-and-confer with him as required under Local Rule 30-1, a rule that applies only to party witnesses. He informed me for the first time that Ms. Yussuf is also barred from entering the United States. Mr. O'Leary offered to make Ms. Yussuf available for deposition in Geneva, Switzerland, but he refused to pay for any expenses incurred by my travel to Switzerland. The only other option he offered was to "wait until the State Department issues Ms. Yussuf a visa" and depose her in the United States. Attached hereto as Exhibit "P" is a true and correct copy of this January 5, 2010 letter.

22. On January 5, 2010, I temporarily withdrew Ms. Yussuf's deposition notice and

-5-

DECLARATION OF PATRICK M. RYAN IN SUPPORT OF CISCO'S OPPOSITION TO THE MOTION BY MULTIVEN, INC., PINGSTA, INC., PETER ALFRED-ADEKEYE, AND DEKA YUSSUF TO QUASH OR MODIFY SUBPOENAS AND FOR PROTECTIVE ORDER.
(5:08-CV-05391-JW-RS)

1 apologized for not having met and conferred regarding the date as is required by local rules when the deponent is the officer of a party. Attached hereto as Exhibit "Q" is a true and correct copy of this January 5, 2010 letter.

23. On January 22, 2010, the parties met and conferred about various discovery-related issues. One of the issues discussed was Multiven's request for an extension to respond to written discovery about its antitrust claims because it was "plaintiff's view that all motion practice and discovery should be temporarily stayed until after Judge Ware rules on the pending [disqualification] motion." Another issue discussed was my intent to re-notice the depositions of Mr. Adekeye and Ms. Yussuf and my intention to notice Plaintiff and Counterdefendants' 30(b)(6) depositions. As explained in advance of the call, I acknowledged that the Moving Parties' "position is that you are refusing to produce them in the United States and will not pay our costs to travel to Europe for their deposition. We, however, intend to renotice [Mr. Adekeye and Ms. Yussuf's] depositions so we can take this issue up with the Court." Therefore, I asked for "available dates for the depositions of Mr. Adekeye and Ms. Yussuf in March". During the meet-and-confer, all parties agreed that we would proceed in this way — I would notice the 30(b)(6) depositions and the Adekeye and Yussuf depositions for the week of March 22 to give Counterdefendants ample opportunity to move for a protective order without also having to move to shorten time. Attached hereto as Exhibits "R-1" "R-2" and "R-3" are true and correct copies of this email exchange.

24. On January 26, 2010, I caused to be personally served via a messenger six deposition notices and the six deposition subpoenas that are the subject of this motion.

25. As agreed by the parties, I noticed Mr. Adekeye's deposition and Ms. Yussuf's deposition and the 30(b)(6) depositions for the week of March 22 and provided Multiven's counsel with four checks, two in the amount of $55 for witness fees and two in the amount of $2,440 for air travel from Switzerland to San Francisco for Multiven's President and Vice President, Mr. Adekeye and Ms. Yussuf. Attached hereto as Exhibit "S" are true and correct copies of the six depositions and the six deposition subpoenas with the corresponding checks.

26. I noticed the custodian of records for Multiven and Pingsta for the week prior to March

-6-

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

DECLARATION OF PATRICK M. RYAN IN SUPPORT OF CISCO'S OPPOSITION TO THE MOTION BY MULTIVEN, INC., PINGSTA, INC., PETER ALFRED-ADEKEYE, AND DEKA YUSSUF TO QUASH OR MODIFY SUBPOENAS AND FOR PROTECTIVE ORDER.
(5:08-CV-05391-JW-RS)

22 so that we would have the documents by the time the substantive depositions of Mr. Adekeye, Ms. Yussuf, Multiven's 30(b)(6) witness, and Pingsta's 30(b)(6) witness were to take place.

27. On February 9, 2010, two weeks after I had the subpoenas hand-served on Ropers, Majeski, Kohn & Bentley and Blecher & Collins, Mr. Pepperman returned the ones served on him to me along with the checks, claiming that "Blecher & Collins is not authorized to accept service of these subpoenas." Attached hereto as Exhibit "T" is a true and correct copy of this February 9, 2010 letter.

28. On February 9, 2010, Mr. Pepperman also served objections to the subpoenas. He objected to the subpoenas to Mr. Adekeye and Ms. Yussuf because: (1) Mr. Adekeye and Ms. Yussuf were not personally served; (2) the subpoenas subjected Mr. Adekeye and Ms. Yussuf to undue burden and expense; (3) the subpoenas failed to allow Mr. Adekeye and Ms. Yussuf a reasonable amount of time to comply; and (4) the subpoenas required Mr. Adekeye and Ms. Yussuf to travel more than 100 miles from his or her residence to attend the deposition. Attached hereto as Exhibit "U" is a true and correct copy of the objections to the subpoenas.

29. On February 9, 2010, Mr. Pepperman also objected to the Rule 30(b)(6) deposition notices served on Multiven and Pingsta because: (1) the subpoenas were not properly served, (2) the subpoenas subjected the 30(b)(6) witness to undue burden and expense, (3) the subpoenas failed to allow a reasonable amount of time to comply, and (4) the subpoenas required the non-party to travel more than 100 miles from its residence. Attached hereto as Exhibit "V" is a true and correct copy of the objections to the subpoenas.

30. On February 9, 2010, Mr. Pepperman also objected to the custodian-of-record subpoenas because: (1) the subpoenas were abusively drawn for harassment purposes, (2) the subpoenas were not properly served, (3) the subpoenas subjected the witness to undue burden and expense, (4) the subpoenas failed to allow a reasonable amount of time to comply, and (5) the subpoenas required the non-party to travel more than 100 miles from its residence to be deposed. Attached hereto as Exhibit "W" is a true and correct copy of the objections to the subpoenas.

31. To determine the difference between what a deposition in Geneva would cost,

-7-

1  compared to what a deposition in San Francisco would cost, my office recently confirmed with
2  Merrill Legal Solutions, a global court reporting firm, the cost estimate for court reporting and
3  related services for a 4-day, videotaped deposition in San Francisco, California and the same in
4  Geneva, Switzerland.  Attached as Exhibit "X" hereto is the e-mail exchange between my office and
5  an Account Executive at Merrill Legal Solutions regarding these cost estimates.  The cost estimates
6  contained in this declaration are derived directly from the rates provided by Merrill Legal Solutions,
7  as reflected in Exhibit X, and do not include costs for time or travel by attorneys or case assistants.

8      32.  The estimated cost for court reporting and related services by Merrill Legal Solutions
9  for a video-taped deposition in San Francisco, California lasting 4 days is $11,180.  This estimated
10 cost is derived as follows:

11     a.  Non-Expedited Transcript, Video Services, and Real-Time Access
12       i.  Transcript Charges - $3,720:  $4.65 per page, 200 pages per day, 4 days
13       ii.  Real-time Access - $2,600:  200 pages per day, 4 days, 1 local connection and
14         1 remote connection
15       iii.  Video Services - $4,300:  $305 first hour, $110 each additional hour, 8 hours
16         per day, 4 days
17       iv.  Videotapes - $560:  4 days

18     33.  The estimated cost for court reporting and related services by Merrill Legal Solutions
19 for a video-taped deposition in Geneva, Switzerland lasting 4 days is $27,377.71.  This estimated
20 cost is derived as follows:

21     a.  Non-Expedited Transcript, Attendance, and Real-Time Access
22       i.  Transcript Charges - $5,720:  $7.15 per page, 200 pages per day, 4 days
23       ii.  Real-time Access - $3,520:  $4.40 per page (includes $1.65 per page for local
24         connection and $2.75 per page for one remote connection), 200 pages per day,
25         4 days
26       iii.  Attendance – $6,580:  $195 per day for court reporter, $1,450 per day for
27         videographer, 4 days

-8-

DECLARATION OF PATRICK M. RYAN IN SUPPORT OF CISCO'S OPPOSITION TO THE MOTION BY MULTIVEN, INC., PINGSTA, INC., PETER ALFRED-ADEKEYE, AND DEKA YUSSUF TO QUASH OR MODIFY SUBPOENAS AND FOR PROTECTIVE ORDER.
(5:08-CV-05391-JW-RS)

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

          iv.  Videotapes - $736:  $184 per day, 4 days

    b.  Travel Time and Expenses

          i.  Airfare - $3,000:  $1,500 per roundtrip flight from San Francisco to Geneva, airfare for court reporter and videographer only

          ii.  Accommodations - $3,500:  $350 per night, 5 nights, accommodations for court reporter and videographer only

          iii.  Subsistence - $950:  $95 per night, 5 days, subsistence for court reporter and videographer only

          iv.  Excess Baggage, Sundries and Taxis - $1,500:  $500 for excess baggage for video equipment, $1,000 for taxis and sundries in Geneva, Switzerland

          v.  Travel Time - $1,871.71:  $535.85 per day for court reporter, $400 per day for videographer, 2 days for round-trip travel

34.  As illustrated above, holding the depositions in Geneva will cost $16,197.71 more than holding them in San Francisco.

35.  Taking into account costs for travel time (assuming a 2 hour pre-departure airport arrival time and a 1 hour post-arrival travel duration) and air time (assuming a 9.5 hour international flight) for 2 attorneys who charge an average billing rate of $450 per hour, it will take a total of 25 hours to fly from San Francisco to Geneva and back (12.5 hours each way), which will cost $22,500 in fees.

36.  Taking into account accommodations for 2 attorneys for 4 days and 5 nights, at a hotel that charges $350 per night (the same rate used to assess the accommodation costs for a videographer and court reporter), this will cost $3,500.

37.  Taking into account meal costs for 2 attorneys for 7 days (assuming 2 travel days and 5 days spent taking the depositions in Geneva), with a daily food allowance of $95 (the same rate used to assess the subsistence costs for a videographer and court reporter), this expense is $1,330.

38.  As stated above, holding the depositions in Geneva will cost $16,197.71 more than holding them in San Francisco.  Not including the cost of flights, the cost associated with travel time

-9-

1  for 2 attorneys to fly to Geneva and back is $22,500.  The cost of 5 nights of accommodations for 2
2  attorneys is $3,500.  Lastly, the subsistence cost for 7 days for 2 attorneys is $1,330.  Thus, a foreign
3  deposition in Geneva, Switzerland will cost a grand total of $43,527.71.
4      I declare under penalty of perjury under the laws of the United States that the foregoing is
5  true and correct.
6      Executed February 23, 2010.

                        */s/ Patrick M. Ryan*
                         Patrick M. Ryan

**Winston & Strawn LLP**
101 California Street
San Francisco, CA 94111-5802

-10-
DECLARATION OF PATRICK M. RYAN IN SUPPORT OF CISCO'S OPPOSITION TO THE MOTION BY MULTIVEN, INC., PINGSTA, INC., PETER ALFRED-ADEKEYE, AND DEKA YUSSUF TO QUASH OR MODIFY SUBPOENAS AND FOR PROTECTIVE ORDER.
(5:08-CV-05391-JW-RS)